**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MELISSA EBERT,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 12-01253 |
| **C.R. BARD, INC., ET AL.,** | : | |
| Defendants. | : | |

**M E M O R A N D U M**

**Stengel, J.**                                                                                              **April 24, 2014**

In this products liability case, the parties disagree about whether a report written by Dr. John Lehmann for the defendants in late 2004 should be produced in discovery. This report was inadvertently disclosed in other cases involving the same or similar product. The plaintiff in this case is represented by the same law firm as the plaintiffs in the cases in which the report was inadvertently disclosed. The plaintiffs in those cases were court-ordered to "immediately and diligently" return or destroy any copies of the report they had received inadvertently. The plaintiff in this case now wants to use Dr. Lehmann's report, though it was never produced to her counsel in discovery.

**I.     BACKGROUND**

    **a.  Factual Background**

Melissa Ebert alleges that she suffered an injury from the implantation of the defendants' G2 inferior vena cava (IVC) filter.[1] An IVC is a venous interruption device designed to prevent pulmonary embolism by filtering blood to prevent material like blood

---

[1] Doc. No. 58 at 3.

clots from blocking the main artery of the lung or one of its branches. The defendants obtained FDA clearance for the Recovery IVC filter through the 510(k) pre-market notification process based upon an already approved predicate device called the Simon Nitinol Filter (SNF).[2] The pre-market approval process required Bard to demonstrate that the Recovery IVC Filter device was the "substantial equivalent" to and has the same or better safety profile than the SNF—the device that was currently on the market. The defendants then obtained FDA clearance for the G2 IVC filter through the 510(k) process based upon the Recovery IVC Filter.[3]

The plaintiff claims that, unlike the safety profile for the SNF, the next two generation of filters—the Recovery and G2 IVC filters—were substantially less safe. She argues that the report shows that the defendants had actual knowledge that the subsequent devices were not the substantial equivalent, yet they still continued to market and sell these devices to members of the public, including the plaintiff.[4]

Other products liability cases against Bard related to its IVC filters have been filed throughout the United States. The first was filed in February 2004.[5] In November 2004, Bard retained Dr. John Lehmann, a former Bard medical affairs consultant, to prepare a

---

[2] See 21 C.F.R. 807.

[3] Doc. No. 58 at 3 and Ex. Q.

[4] Doc. No. 58 at 3.

[5] Doc. No. 60 at 3-4.

litigation consultant report.[6] Dr. Lehmann signed a contract to perform work for Bard's law department, which was intended to serve both as legal advice concerning the IVC filters and to assist the law department with anticipated and ongoing litigation.[7] Dr. Lehmann was also instructed by counsel for Bard to convey the results of his investigation to the law department and to those whom the law department may direct.[8]

Dr. Lehmann conducted his investigation in November and December of 2004 and submitted his final report in December 2004.[9] In preparing his report, Dr. Lehmann spoke with a small, limited number of Bard employees in accordance with specific tasks he was required to carry out under his contract.[10] The law department subsequently distributed the report to a small select number of employees outside of the law department but within the company.[11] These employees were instructed that the report was confidential and that further distribution of the report was limited only to those who needed the report to perform their job functions.[12]

---

[6] Affidavit of Donna Passero, Esq., Doc. No. 55, Ex. 1 at ¶ 6. My *in camera* review of the agreement governing Dr. Lehmann's employment as a consultant in creating this report also confirms that the report was created "in anticipation of litigation." See Doc. No. 74.

[7] Affidavit of Donna Passero, Esq., Doc. No. 55, Ex. 1 at ¶ 6, 9.

[8] Id. at ¶ 9.

[9] Id. at ¶ 10-11.

[10] Id. at ¶ 11.

[11] The defendants claim only four employees outside the law department received the report. Id.

[12] Id.

Subsequently, the defendants used the Lehmann Report to create a Remedial Action Plan and Health Hazard Evaluation.[13]

### b. Relevant Procedural History

The plaintiff in this case is represented by lawyers from the Philadelphia office of Lopez McHugh. Lopez McHugh's California office represents plaintiffs in other cases against Bard related to the IVC filters in several other jurisdictions.[14] In other cases, Lopez McHugh and Bard agreed to a protective order that enabled Lopez McHugh to use any documents produced in those cases in all of the cases in which Lopez McHugh was involved.[15] The purpose of that order was to allow for effective and efficient use of judicial resources.[16]

---

[13] Doc. No. 60 at 6.

[14] Doc. No. 55 at 4.

[15] Doc. No. 58, Ex. D. For example, the stipulated protective orders in Tolwson and Towlson v. C.R. Bard, Inc., et al., CV2011-022334 (Ariz. Super. Ct. Sept. 11, 2012), and Stesney v. C.R. Bard, Inc., No. CV2012-6103 (Ariz. Super. Ct. Sept. 11, 2012), both state: "10. As to sharing beyond this case, Plaintiffs and their counsel (Joshua S. Parilman, Parilman & Associates, John A. Dalimonte, Karon & Dalimonte, LLP, and Teresa C. Toriseva, Toriseva Law) in this lawsuit may share "Confidential Information" with a plaintiff and his or her counsel in another lawsuit against Defendants ("Other IVC Filter Litigation") under the following circumstances: (a) the plaintiff filed the Other IVC Filter Litigation against Defendants; [sic] (b) the plaintiff in the Other IVC Filter Litigation is represented by Joshua S. Parilman, Ramon R. Lopez, Troy A. Brenes, Jack D. Davis, R. Dean Hartley, John A. Dalimonte, and/or Teresa C. Toriseva; (c) the Other IVC Filter Litigation includes product liability claims brought against Defendants related to inferior vena cava filters; and (d) there is an agreed, stipulated protective order entered in the Other IVC Filter Litigation, which is similar in form to that which has been entered in this lawsuit and may protect the Confidential Information in the Other IVC Filter Litigation after it has been shared or, in the event such a stipulated protective order has not yet been entered in the Other IVC Filter Litigation, counsel in that litigation has signed Exhibit A and agrees to the terms to this Protective Order. To be clear, the limited sharing of Confidential Information is intended to allow counsel listed in section (b) to use the Confidential Information obtained in this lawsuit in Other IVC Filter Litigation, in which they represent other plaintiffs, and vice versa, without requiring Defendants to reproduce the Confidential Information. The limited sharing of Confidential Information is permitted for the effective and efficient administration of justice and should not be interpreted to minimize the confidential, proprietary status of the Confidential Information." Doc. No. 58, Ex. F at ¶ 10.

I will note that the Lopez McHugh attorney representing the plaintiff in this case is not one named in these provisions allowing for sharing.

[16] I find the plaintiff's emphasis on this point in her briefing ironic. In this case alone, this dispute has resulted in the filing of hundreds of pages, over twenty exhibits, and three other motions related to the dispute. The plaintiff's

4

On December 14, 2012, Bard inadvertently disclosed to plaintiff's counsel twelve privileged documents including the litigation consultant's report in those other cases.[17] On December 21, 2012, Bard requested a "clawback" of those inadvertently produced, privileged documents in accord with the protective orders in those other cases.[18] On January 23, 2013, Bard's attorney sent the Lopez attorneys a letter with redacted images of the clawed-back documents, to replace the clawed-back documents. The letter also reminded the attorneys of their obligation to destroy or return the clawed back documents.[19]

Subsequently, the parties litigated the issue of whether the report was privileged or protected in those other cases. A California state court denied the clawback request in an unpublished order with no explanation or analysis.[20] The United States District Court for the District of Nevada, on the other hand, determined that Dr. Lehmann's litigation consultant report was protected from discovery by the work-product doctrine and attorney-client privilege in a nearly 70-page opinion.[21]

---

contention that sharing these inadvertently disclosed documents, simply because the plaintiffs share counsel, does not appear to have promoted judicial efficiency, as the Lopez McHugh attorneys and Bard apparently intended in their stipulated protective orders.

[17] Id.

[18] Doc. No. 55, Ex. 2.

[19] Doc. No. 55, Ex. 3.

[20] Doc. No. 58, Ex. C (Giordano v. C.R. Bard, Inc., et. al, No. 37-2011-00069363-CU-PO-EC (Cal. Super. Ct. Aug. 15, 2012)) (denying a clawback request for the report after it was inadvertently disclosed in a Minute Order with no explanation of the court's reasoning for its decision).

[21] Phillips v. C. R. Bard, Inc., 290 F.R.D. 615, 660-61 (D. Nev. 2013). The Nevada Court denied reconsideration on August 7, 2013. Despite the Phillips ruling, the plaintiff's attorneys in that case continued to use Lehmann's report during a series of depositions in that case, which were also cross-noticed in this and other cases. These depositions include those of Doug Uelmen, David Ciavarella, M.D., Rob Carr, Shari O'Quinn, Bill Altonaga, and Janet Hudnall.

On April 30, 2013, following Bard's clawback of these privileged documents in the other cases and the Nevada district court's decision, Bard produced over two million pages of documents and electronically stored information in this case pursuant to the terms of the Agreed Protective Order.[22] Having learned its lesson from the previous productions, Bard did not produce the twelve protected documents that had been inadvertently produced before. Bard claimed the litigation report, along with other documents, was protected and listed the report on its privilege logs (both on its original privilege log, served August 9, 2013, and on its revised privilege log, served on September 6, 2013).[23]

### c. Motion for Protective Order

Pursuant to Federal Rule of Civil Procedure 26(c), the defendants request that this court enter a protective order requiring the plaintiff and plaintiff's counsel to destroy all copies of the litigation report in their possession and preclude the plaintiff or plaintiff's counsel from using the contents of the report in this case. The Litigation Consultant Report was not produced in this case, but was obtained by the plaintiff because she has counsel who was also counsel in one of the cases in which the report was inadvertently

---

The defendants moved for a protective order in the Phillips action to prevent the plaintiff from continuing to use the report in depositions. After a hearing on December 13, 2013, the court entered an order reiterating its previous ruling that plaintiff's counsel could not use the report in the Phillips matter. See Doc. No. 55 at 6 n. 4.

[22] Doc. No. 55, Ex. 3 and 4. On August 20, 2012, an Agreed Protective Order was entered in this case which addressed numerous discovery issues, including the parties' treatment of inadvertently produced material protected by the attorney-client privilege and/or work-product doctrine. Doc. No. 15. This order was subsequently amended by agreement of the parties on August 20, 2013. Doc. No. 47.

[23] Doc. No. 55, Ex. 5 and 6.

disclosed. Depositions from those other cases have been cross-noticed in this case. The plaintiff opposes this motion.[24]

## II. DISCUSSION

Federal Rule of Civil Procedure 26(c) provides that, upon a motion by a party from whom discovery is sought and for good cause shown, the court may enter a protective order preventing discovery on certain matters. Bard claims that good cause exists because the Lehmann Report is covered by the work-product doctrine. The plaintiff argues that the Lehmann Report was not created "in anticipation of litigation" and was, instead, only meant to comply with Bard's regulatory reporting requirements.

Several courts have already found that the Lehmann Report is covered by the work-product doctrine.[25] Others have found that the work-product doctrine does not protect the report.[26] While none of these prior decisions is binding, I agree that the work-product doctrine protects the Lehmann Report.[27]

---

[24] In addition, other motions related to this motion for protective order were filed and briefed. See Doc. No. 59, 60, 61, 62, 65, 66, 71, 72, 76, 77. I ruled on several of these other motions and determined that the consulting agreement—which the defendants claim was also protected—should be disclosed without its appendix to the plaintiff. This agreement offers evidence that is pertinent to this motion for protective order. See Doc. No. 64, 67, 74, 75.

Both sides have offered voluminous filings to support their positions. I have reviewed all of these submitted materials in making my decision.

[25] See Phillips v. C. R. Bard, Inc., 290 F.R.D. 615, 660-61 (D. Nev. 2013); Carr v. C.R. Bard, Inc., No. 3:13CV824, 2014 WL 463447, at *8 (N.D. Ohio Feb. 5, 2014); Rackliff v. C.R. Bard, Inc., et al., No. CV 2011-021206 (Ariz. Super. Ct. Feb. 12, 2014).

[26] See Giordano v. C.R. Bard, Inc., et. al, No. 37-2011-00069363-CU-PO-EC (Cal. Super. Ct. Aug. 15, 2012) (denying a clawback request for the report after it was inadvertently disclosed in a Minute Order with no explanation of the court's reasoning for its decision); Payne v. C. R. Bard, Inc., 6:11-cv-1582-Orl-37GJK (M.D.Fla. Mar. 28, 2014); Tillman v. C. R. Bard, Inc., 3:13-cv-222-J-34-JBT (M.D.Fla. Mar. 28, 2014).

[27] Since the decisions made by other courts regarding the protections afforded the Lehmann Report have been made in other federal district courts or in state courts, they serve only as persuasive, not binding, authority. The reasoning I offer for my decision aligns with that of Phillips, Carr, and Rackliff. I especially find the reasoning offered in Carr

7

### a. Work Product Doctrine[28]

The work product doctrine allows lawyers to prepare a case "without undue and needless interference." Hickman v. Taylor, 329 U.S. 495, 511 (1947). This protection extends to non-lawyers working on behalf of lawyers to prepare for litigation.[29] "Litigation consultants retained to aid in witness preparation may qualify as non-

---

to be persuasive, as a case most analogous to this action. In Carr, like here, the plaintiff was injured by a G2 Filter and was seeking to use the Report though it had not been produced in her case.

The Giordano court simply indicated in its April 10, 2013 Minute Order that "After consideration of all arguments and evidence, the Court rules that Defendant's clawback request is denied." See Doc. No. 58, Ex. C. This minute order offers no reasoning for the decision or the factual findings on which the court based its decision; for this reason, it offers little support for either position.

Payne and Tillman were decided after Phillips, Carr, and Rackliff; the court in those cases found them to be legally distinct based on a circuit split. Payne and Tillman made clear that it used the "primary motivating purpose" test in determining whether work-product applied, as compared to the "because of" standard used in the Third Circuit and in Carr. See, e.g., In re Grand Jury Investigation, 599 F.2d 1224, 1229 (3d Cir. 1979) (adopting the "because of" test of work-product); Scardino v. Amalgamated Bank of New York, Civ. A. No. 93-6740, at *2 (E.D.Pa. May 25, 1995); Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., Civ. A. No. 88-9752, 1991 WL 211223, at *4 (E.D. Pa. Oct. 9, 1991). While other courts have distinguished these two standards, Third Circuit courts have found them to be analogous. See, e.g., U.S. v. Rockwell Intern., 897 F.2d 1255, 1266 (3d Cir. 1990)(discussing the "primary motivating purpose" standard, explaining how it is "analogous" to the Third Circuit's "because of" standard); Montgomery County v. MicroVote Corp., 175 F.3d 296, 306 (1999)(Greenberg, J.)(concurring); SmithKline Beecham Corp. v. Apotex Corp., 232 F.R.D. 467, 473 (E.D.Pa. 2005)("In undertaking this analysis, a court must consider the motivating purpose behind the creation of the document."), but see, Pacific Gas & Elec. Co. v. United States, 69 Fed.Cl. 784, 790–91 (2006) (discussing the difference between the "motivating purpose" and "because of" standards).

For this reason, I cannot distinguish Payne and Tillman based on the legal test employed—as the defendants urge and as the court in Payne and Tillman did in distinguishing Carr. Instead, I am more persuaded by Carr's interpretation of the facts involved, than by the interpretation explained in Payne and Tillman, and see it as being more in line with Third Circuit precedent. See U.S. v. Rockwell Intern., 897 F.2d 1255, 1266 (3d Cir. 1990)(explaining that the finding of a work-product protection is factual in nature); In re Cendant Corp. Sec. Litig., 343 F.3d 658, 664-65 (3d Cir. 2003) (discussing when a litigation consultant report is covered by the work-product doctrine).

[28] The plaintiff's arguments often interchange the protections afforded by the work-product doctrine with those offered by the attorney-client privilege. While courts often discuss them together, I will note that they are distinct doctrines with distinct case law. See, e.g., Upjohn Co. v. United States, 449 U.S. 383 (1981).

[29] See, e.g., United States v. Nobles, 422 U.S. 225, 238-39 (1975)("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.").

8

attorneys who are protected by the work product doctrine." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 665 (3d Cir. 2003)(citations omitted).

Federal Rule of Civil Procedure 26(b)(3) prevents discovery of documents "prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, *consultant*, surety, indemnitor, insurer or agent)." FED. R. CIV. P. 26(b)(3)(A)(emphasis added). Rule 26(b)(4)(D) also provides that a party may not "discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation."[30] These two rules provide separate work product protections for litigation consultants. In re Cendant, 343 F.3d at 664-65. This "general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." Id. at 512.[31]

Whether a document was prepared "in anticipation of litigation" is a factual question. U.S. v. Rockwell Intern., 897 F.2d 1255, 1266 (3d Cir. 1990)(citations omitted). The Third Circuit has explained that a document satisfies Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can

---

[30] This section pertains to expert witnesses who are not expected to be called as a witness at trial. During a telephone conference with counsel for the parties held on April 7, 2014, the defense counsel confirmed that Dr. Lehmann would not be an expert witness at trial.

[31] See also Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1428 (3d Cir. 1991)(" Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.").

fairly be said to have been prepared or obtained because of the prospect of litigation." Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir. 1993)(citations and quotation marks omitted).[32]

The facts show that the Lehmann Report was created because of impending litigation related to the IVC filters. The defendants received their first claim related to alleged failures in the Recovery Filter in February 2004.[33] Lehmann entered into a consulting agreement with Bard's Law Department in November 2004. The consulting agreement between Lehmann and the defendants governing his consulting services in preparing the report clearly states that he was being hired "in anticipation of litigation."[34] The tasks outlined as part of the agreement differ from those required of Lehmann by other consulting agreements entered into by him and the defendants—indicating that the purpose of his services was related to the pending litigation and they were not performed as ordinary business functions.

In addition, the facts show that Lehmann was serving as an agent for the law department in creating this report. The consulting agreement indicates that Lehmann was to be supervised by Donna Passero, Assistant General Counsel for Bard. The cover memo

---

[32] The preparer's anticipation of litigation must also be "objectively reasonable;" however, since it is clear that litigation was already pending at the time the report was created, there is little question that this part of the test is met. See Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993).

[33] Carr, 2014 WL 463447 at *6.

[34] Many of the plaintiff's arguments as to why the report is not covered by the work-product doctrine relate back to the fact that the defendants had not produced the consulting agreement to the plaintiff in discovery because the defendants claimed it also was covered by the work-product doctrine. After reviewing the consulting agreement *in camera*, I determined that part of it was technically covered by the doctrine; however, the main body of the agreement should be produced in order to help resolve this dispute over the Lehmann Report's coverage as well. See Doc. No. 74.

for the report, signed by Lehmann, indicates it was then sent to Passero on December 15, 2004; the final report was attached. Each page of the report is dated December 15, 2004 and is titled "Vena Cava Filters – Final Report." Each page also indicates that the report is "Privileged and confidential, Attorney work product, Pursuant to contract."[35] For these reasons, I find that the Lehmann Report is protected by the work-product doctrine under Rule 26(b)(3).[36]

### b. Substantial Need to Overcome the Protection

The plaintiff argues that, despite the work-product doctrine, her "substantial need" for the report requires its production. Under Rule 26(b)(3) a party seeking discovery of

---

[35] While I recognize that this labeling is not dispositive, it further bolsters the defendants' contention that the document was created "in anticipation of the litigation" and not for some other business purpose.

[36] The plaintiff argues that the Lehmann Report was prepared for federal regulatory compliance and not for pending litigation. The plaintiff cites to her attorney's acknowledgement that he will not disclose confidential information in the California case as evidence of this point. See Doc. No. 58 at 16; Doc. No. 65, Ex. E.

The plaintiff also argues that use of the Lehmann Report to create the Health Hazard Evaluation (HHE) and Remedial Action Plan (RAP) is further proof that the report was merely done for compliance purposes. The plaintiff, however, fails to cite to which specific regulations require such tasks or show that the report itself was submitted in order to comply with regulations. Instead, she simply cites generally to 21 C.F.R. 820, the provisions involving quality systems regulation of medical devices. This mere citation does not appear to be enough to denote that this report was necessarily made in compliance with those regulations, when the rest of the facts and circumstances of the report show otherwise.

Dr. David Ciavarella, M.D., medical director at the time the Report came out, used the Report to create the Health Hazard Evaluation. At one point in his deposition, he indicates that he was not told the report was to be kept confidential. Ciavarella Depo., Ex. K at 278. However, Dr. Ciavarella indicates later in his deposition that he was told the report was to remain confidential or was to be used for a litigation purpose. See Doc. No. 60 at 5.

Even if the HHE and RAP were used for compliance purposes after the Report was created for litigation purposes, this would not destroy the protection. See Carr, 2014 WL 463447 at *4 (citing In re Prof'l Direct Ins. Co., 578 F.3d 432, 439 (6th Cir. 2009))("If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection [under the 'because of' standard].").

The plaintiff also argues that the plea agreement in U.S. v. CR. Bard, Inc., 848 F.Supp. 287, 291-92 (D. Mass. 1994), governs this compliance. While the plea agreement provided that Bard—which was found to have withheld adverse information from the FDA—"will implement specified corporate remedial measures and keep them in effect for four years," there is nothing in the report or other information provided by the parties to show that this plea agreement was the real reason for the Lehmann Report's creation. Given that this part of the agreement was only in effect until 1998 and the Report was authored in 2004, this argument also is unpersuasive.

11

materials covered by the work product doctrine must show that she has a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[37] FED. R. CIV. P. 26(b)(3)(A)(ii). Even if a court permits disclosure of materials covered by the work-product doctrine based on the "substantial need" exception, the court must still protect against disclosure of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney *or other representative* concerning the litigation." FED. R. CIV. P. 26(b)(3)(B)(emphasis added).[38]

The plaintiff herself admits that "the conclusions of Bard's consultant as to that data" are what she cannot recreate and that which she seeks in discovery.[39] When a document by an attorney or other representative of a party concerning the litigation includes these "mental impressions, *conclusions*, opinion, or legal theories," this "opinion" work product is "generally afforded near absolute protection from discovery." In re Cendant, 343 F.3d at 663 (emphasis added). Therefore, a litigation consultant's advice based on information disclosed during private communications between a client, the client's attorney, and the consultant "may be considered 'opinion' work product

---

[37] This exception under Rule 26(b)(3) is similar to the exception under Rule 24(b)(4)(D), which provides the discovery of opinions by experts employed only for trial preparation is only available "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." FED. R. CIV. P. 26(b)(4)(D)(ii).

[38] See also In re Cendant Corp. Sec. Litig., 343 F.3d 658, 663 (3d Cir. 2003) (holding that work product encompassing the mental impressions, conclusions, or opinions of a representative of a party concerning the litigation are protected).

[39] Doc. No. 58 at 21. She goes on to say, "Even the most rigorous analysis of the same data by Plaintiff's own experts will only serve as Plaintiff's conclusions regarding the data. Not having access to Lehmann's Report, recommendations and conclusions takes away evidence from the jury that Bard's own hired consultants concluded what Plaintiffs contend in their pleadings." Id.

which requires a showing of exceptional circumstances in order for it to be discoverable." Id.

The plaintiff has established no exceptional circumstances or substantial need to overcome the work-product protection. The plaintiff argues that the Lehmann Report shows that the defendant had actual knowledge that the Recovery Filter was dangerous as compared to its predicate, the SNF. She contends that since the Recovery filter was the predicate of the plaintiff's filter—the G2 filter—then the defendant's knowledge that the Recovery Filter was causing injuries somehow indicates that the G2 Filter was also dangerous because it was shown to be a "substantially equivalent" product under the FDA clearance process. The plaintiff claims that even the most rigorous analysis of the same data used by Dr. Lehmann in preparing his report by the plaintiff's own experts would not be sufficient because she would have no other way to establish Bard's actual knowledge of the IVC filter's dangers without undue hardship.[40]

This is just not the case.[41] The Remedial Action Plan and the Health Hazard Evaluation, which were created with the use of information from the Lehmann Report, have been produced in this case. They offer evidence that the defendants were aware of problems with the Recovery Filter when they developed the G2 Filter. The plaintiff,

---

[40] The defendant has not asserted in this case that those other documents are privileged or non-discoverable. See Doc. No. 60 at 5 n. 7.

The plaintiff has also proffered opinions by Dr. Michael Freeman, who conducted an analysis similar to that of Dr. Lehmann. See Doc. No. 60 at 9.

[41] See also Carr, 2014 WL 463447, at *6 ("Carr goes on to assert that 'there is no other way for Plaintiff to establish that Bard's quality control and management employees were on notice of design defects in the Recovery Filter' except through production of the Lehmann Report. Not so.")(citation omitted).

however, believes the Lehmann Report itself would serve as stronger evidence of the defendants' awareness of the Recovery Filter's dangerousness because it is more detailed. This, however, is not enough of a substantial need to overcome Rule 26's work product discovery bar.

### c. Waiver

The plaintiff also argues that the work-product doctrine, if it applies, was waived because the defendants cross-noticed the depositions in this case with those in other cases, including cases in which the Lehmann Report was inadvertently disclosed. Work-product protection is waived when a client voluntarily discloses the protected documents to one's adversaries. Montgomery County v. MicroVote Corp., 175 F.3d 296, 304 (3d Cir. 1999)(quoting Westinghouse v. Republic of the Philippines, 951 F.2d 1414, 1428 (3d Cir.1991)).

This novel "waiver by cross noticing depositions" argument has no support in any rule or case. [42] Possibly the plaintiff is trying to imply that the inadvertent disclosure of the Report in those other cases counts as a disclosure to adversaries in this case. [43] That is just silly. Following the inadvertent disclosure and Bard's subsequent invoking of the

---

[42] The plaintiff's other waiver arguments relate to the waiver of the attorney-client privilege, which is an entirely separate issue.

[43] While it is true that the protective order in the California action—in which the clawback request was denied—provided that the attorneys could use documents in that and other actions involving Lopez McHugh, that use is subject to the protective orders in those other actions. See Doc. No. 58, Ex. D at ¶ 11 (Giordano v. C.R. Bard, Inc., et. al, No. 37-2011-00069363-CU-PO-EC (Cal. Super. Ct. Aug. 15, 2012))("11. All Confidential Information shall be used for the purpose of this lawsuit only, and except as permitted by this Order, the parties, and their respective attorneys, as well as experts or consultants, shall not give, show or otherwise divulge or disclose the substance of the Confidential Information, or any copies, prints, negatives or summaries thereof to any person or entity. Notwithstanding the foregoing provisions of this paragraph, nothing in this Order shall prevent the use of any of the documents or ESI produced pursuant to this Protective Order in other actions brought by the plaintiff's counsel, so long as a comparable protective order is entered in those other actions."). Those protective orders clearly state that inadvertent disclosure does not constitute a waiver.

clawback provision in the parties' agreed-upon protective order, Bard made clear that the Report was not to be used by the opposing side.[44] Furthermore, courts agreed that the Report should not be used in the litigation. The defendants have made clear in this litigation, and in all other litigation, that the Report is protected by work-product and have objected to its use in those depositions.[45] As the Stipulated Protective Order clearly states, inadvertent disclosure does not waive the privilege.[46]

---

[44] See Doc. No. 55, Ex. 2, 3, 5, and 6.

[45] See also Carr, 2014 WL 463447, at *8 ("Carr has not demonstrated waiver of the Lehmann Report's work product protection.").

[46] The Amended Protective Order in this action, to which the parties agreed and stipulated, states:

15. Inadvertent production of documents or electronically-stored information ("ESI") (hereinafter collectively "Inadvertently-Produced Documents") subject to work-product immunity, the attorney-client privilege, or other legal privilege protecting information from discovery shall not constitute a waiver of the immunity or privilege, provided that the producing party shall notify the receiving party in writing as set forth. In the event that a party inadvertently produces documents or ESI subject to a claim of privilege, the producing party shall, within 30 days of the discovery of the inadvertent disclosure, notify the other party in writing of the inadvertent disclosure. The producing party may, in the notice, request a "clawback" of the inadvertently disclosed document or ESI. The party receiving such clawback notice shall immediately and diligently act to retrieve the Inadvertently-Produced Documents, and all copies, including any loaded to databases, and return them to the producing party or destroy them as agreed between the parties. All notes or other work product of the receiving party, reflecting the contents of such materials, shall be destroyed and not used.

If the receiving party elects to file a motion as set forth below, the receiving party, subject to the requirements below, may retain possession of the Inadvertently-Produced Documents as well as any notes or other work product of the receiving party reflecting the contents of such materials pending the resolution by the Court of the motion below, but shall segregate and not use them pending resolution of the motion. If the receiving party's motion is denied, the receiving party shall promptly comply with the immediately preceding provisions of this paragraph. No use shall be made of such Inadvertently Produced Documents during depositions or at trial, nor shall they be disclosed to anyone who was not given access to them prior to the 'request to return or destroy them unless otherwise ordered by the Court.

The party receiving such Inadvertently-Produced Documents may, after receipt of the producing party's notice of inadvertent production, move the Court to dispute the claim of privilege or immunity, but the motion shall not assert the fact or circumstances of the inadvertent production to challenge whether the material is, in fact, privileged. **There is no waiver of privilege or work product protection in this matter or any other matter in any other jurisdiction for any document or ESI clawed-back under this clause, or for the subject matter of any such document or ESI, whether the privileged document or ESI was inadvertently provided following review or as part of a "Quick Peek" production.** In the event that either party receives information produced in discovery from the other party that reasonably appears to be Inadvertently-Produced Documents, the receiving party shall promptly notify the producing party in writing of the apparently inadvertent production.

Doc. No. 47 at ¶ 15, entered on August 19, 2013 (emphasis added).

### III. CONCLUSION

For the reasons stated above, I find that the Lehmann Report is protected by the work-product doctrine; neither substantial need nor waiver overcomes this protection.[47] I will grant the defendants' motion for protective order.

An appropriate Order follows.

---

In addition, the protective orders in cases in which the report was inadvertently disclosed include provisions addressing inadvertent disclosure of documents covered by the work product doctrine, attorney client privilege, or other legal privilege, which provide a clawback procedure and address the non-waiver of such information in the event of inadvertent disclosure. See Doc. No. 58, Ex. D at ¶¶ 20, 30 and Ex. F at ¶ 16 (Towlson and Stesney).

[47] The defendants also argue that the Lehmann Report is covered by the attorney-client privilege. Since the attorney-client privilege is a narrower protection and I have already determined that the report is non-discoverable, I will decline to discuss the merits of those privilege arguments.